IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AIKEN DIVISION

| | | |
|---|---|---|
| Robert Lee Randolph, Jr., | ) | Civil Action No. 1:16-cv-02953-TMC-SVH |
| Plaintiff, | ) | |
| vs. | ) | **ORDER** |
| Vernetta Dozier and Harold Young, | ) | |
| Defendants. | ) | |

Plaintiff, a pretrial detainee held in Orangeburg County Detention Center ("OCDC"), proceeding pro se, filed this civil action pursuant to 42 U.S.C. § 1983. In accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this matter was referred to a magistrate judge for pretrial handling. Defendants filed a Motion for Summary Judgment on March 10, 2017. (ECF No. 31). The magistrate judge issued an order pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), alerting Plaintiff of the potential consequences if he did not respond to the motion sufficiently. (ECF No. 32). Before the court is the magistrate judge's Report and Recommendation ("Report") (ECF No. 47), recommending the Defendants' Motion for Summary Judgment be granted. Plaintiff was advised of his right to file objections to the Report. (ECF No. 47 at 9). Plaintiff filed objections to the Report, (ECF No. 50), and later supplemented those objections, (ECF No. 51).

The recommendations set forth in the Report have no presumptive weight, and this court remains responsible for making a final determination in this matter. *See Matthews v. Weber*, 423 U.S. 261, 270–71 (1976). The court is charged with making a *de novo* determination of those portions of the Report to which a specific objection is made, and the court may accept, reject,

1

modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1). However, the court need not conduct a *de novo* review when a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of a timely filed, specific objection, the magistrate judge's conclusions are reviewed only for clear error. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I. BACKGROUND

In his Complaint, Plaintiff alleges that he is housed under hazardous living conditions because of a black mold infestation at the jail. (ECF No. 1 at 4). Plaintiff alleges that this mold is found in the cells, showers, and living quarters of the Orangeburg County Detention Center. *Id.* at 5. Plaintiff states that because of this mold, he has suffered constant itching, irritations all over his body, and shortness of breath. *Id.* As relief, Plaintiff seeks "any and all money available to [him] for pain and suffering, physical duress, ailments, mental anguish, etc." (ECF No. 1 at 6).

As attachments to their Motion for Summary Judgment, Defendants provided multiple "Inmate Request Forms" and medical forms regarding Plaintiff and his alleged symptoms.[1] (ECF No. 31-2 at 8–14). According to these reports, Plaintiff requested medical attention on August 14, 2016, complaining of his body itching, a bump on his arm, and shortness of breath. (ECF No. 31-2 at 8). However, the nurse noted that there was "no rash or skin irritation" present. *Id.* Plaintiff sought further medical assistance on August 16, 2016, complaining of itching, bumps, black marks, and shortness of breath. *Id.* at 9. This was listed as a "duplicate sick call" since Plaintiff had just been seen two days earlier by medical staff. *Id.* On August 22, 2016, Plaintiff saw medical staff again, complaining of shortness of breath and itching. *Id.* at 10. The nurse

---
[1] These forms contain the written requests and signature of Plaintiff.

noted that, upon examination, there were no symptoms and that the pulse oximeter showed that Plaintiff's oxygen levels were at 99% saturation, indicating no respiratory distress. *Id.* Again, Plaintiff requested medical attention on August 24, 2016, and was seen on August 28, 2016. *Id.* at 11. Plaintiff's complaints were consistent with his earlier complaints. *Id.* Upon examination, the nurse noted that there was a raised area on Plaintiff's arm that appeared to be eczema and that Plaintiff had no respiratory distress. *Id.* at 12. The nurse prescribed Plaintiff some hydrocortisone cream for the place on his arm. *Id.* at 13. Finally, on September 14, 2016, Plaintiff requested medical attention for the same complaints and for sinus problems. *Id.* at 14. The nurse noted that Plaintiff had a stuffy nose, some itching, and some sinus pressure, so she ordered him a prescription of Claritin. *Id.*

In addition to these medical reports, Defendants attached an affidavit from Defendant Dozier and test reports from mold testing to their Supplemental Memorandum in Support of their Motion for Summary Judgment. Defendant Dozier's affidavit states that a private company, Compliance Centre, performed a mold inspection in October of 2016, at the facility.[2] (ECF No. 46-1). That inspection revealed that there was mold on the ceiling of the shower area of Gate 8, that the airborne mold level was lower than that found outside the building and was not excessive, and that mold was found on the wall of Room 116, Pod A. (ECF No. 42-2). The report recommended using a mold killer and blocker on those areas, vacuuming with a HEPA vacuum, and maintaining a lower humidity level to prevent regrowth of mold. *Id.* at 5. Defendant Dozier stated in her affidavit that all of these recommendations were followed. (ECF No. 42-1). Furthermore, Defendants attached a report of all of the cells in which Plaintiff has resided, which shows that Plaintiff did not reside in the affected areas. (ECF No. 46-3).

---

[2] It is uncontested that the facility was inspected in October 2016. Plaintiff originally stated that the Environmental Protection Agency came in to inspect the facility in October 2016. (ECF No. 17). However, Plaintiff conceded that it may have been a private company that came to inspect the property. (ECF No. 50).

3

## II. STANDARD OF REVIEW

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. at 248. Therefore, mere "factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, a litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Accordingly, "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (4th Cir. 1996).

## III. DISCUSSION

In evaluating a pro se plaintiff's complaint, the court is charged with liberally construing the factual allegations of the complaint in order to allow potentially meritorious claims to go forward. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Upon careful review, the court finds that many of Plaintiff's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report, or merely restate his claims. However, the court is able to glean that Plaintiff alleges that the magistrate judge erred in finding that he had not asserted a cognizable Constitutional violation under the stated facts.

Because Plaintiff was a pretrial detainee at all times relevant to the claims at issue, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment, which is ordinarily used to evaluate conditions of confinement for those convicted of crimes. *See City of Revere v. Mass Gen. Hosp.*, 463 U.S. 239, 244 (1983). However, the "due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).

In order to state a claim alleging that conditions of confinement violate constitutional requirements, a pretrial detainee must show "both (1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials." *See Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir. 1991). To demonstrate that the prison's conditions deprived him of a basic human need, a plaintiff must allege that officials failed to provide him with humane conditions of confinement, such as "adequate food, clothing, shelter, and medical care, and . . . reasonable measures to guarantee the safety of inmates." *Farmer v. Brennan*, 511 U.S. 825, at 832 (1994). Furthermore, in order to prove that the prison officials were "deliberate[ly] indifferen[t]" to the conditions, a plaintiff must show that the prison official had actual knowledge of a substantial risk of harm to a prisoner and that the official disregarded that risk. *Id.* at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004).

Plaintiff has not shown that the conditions of his confinement rise to the level of being a Constitutional violation. While it is uncontested that mold was found within OCDC, Plaintiff has failed to show how Defendants have been deliberately indifferent of this fact. Defendants have submitted multiple affidavits and a mold inspection report showing that the facility has conducted mold inspections in 2013 and 2016. (ECF No. 31-2). Notably, the 2016 inspection

report [3] stated that there were no excessive or harmful concentrations of mold and that the airborne level of the mold was less inside than it was outside. (ECF No. 46-2). Furthermore, the inspection recommended remediation procedures. *Id.* In her affidavit, Defendant Dozier stated that every recommendation was followed. (ECF No. 46-1). Additionally, when Plaintiff complained to medical staff of various symptoms that he described as being related to mold, he was seen and treated accordingly. (ECF No. 31-2 at 8–14).

In light of the undisputed evidence, Plaintiff has provided no evidence that Defendants knew of and disregarded a substantial risk of serious injury to him. *See Parrish*, 372 F.3d at 302–03. In fact, Defendants have shown, and Plaintiff has not contested, that when Defendant suspected that mold existed within the facility, it hired a private company to come conduct testing on the facility. When the inspection results came back positive for mold in several locations, OCDC followed the recommended remediation procedures to ensure that the facility was safe. (ECF No. 46-1). Furthermore, when Plaintiff complained to a nurse of mold being in his cell, none was found. (ECF No. 31-2). Still, the nursing staff treated Plaintiff according to his symptoms, and Defendants relied on the nurses' assessments of Plaintiff. *Id.* Plaintiff has not complained of inadequate medical attention.

Based on the uncontroverted facts, the court finds that there is no genuine issue of material fact as to whether the Defendants deliberately disregarded the Plaintiff's complaints of mold or his medical needs. The court finds that Defendants adequately addressed each of these complaints and concerns and did not deliberately disregard them. Furthermore, in his objections,

---

[3] While Plaintiff has resided at OCDC various times within the years of 2008, 2009, 2010, 2012, and 2014, Plaintiff states that the events giving rise to his Complaint occurred starting on April 11, 2016. (ECF No. 1 at 5). Therefore, the 2013 results are largely irrelevant to his current claims. The 2016 report revealed mold in only one cell. (ECF No. 46-3). Though Plaintiff resided in that cell for a short period not exceeding twenty-four hours in 2014, he did not reside in that cell any time in 2016, when he alleges the events giving rise to his Complaint occurred. (ECF No. 46-3).

Plaintiff focuses on non-material factual disputes with the Report such as what agency conducted the mold test, when inmates were moved from one area to another for remediation purposes, and why his Complaint is pro se. (ECF No. 50 and 51). Plaintiff does not, however, address the deficiencies of his claims or refute the magistrate judge's determination that he has not sufficiently shown that Defendants were deliberately indifferent to his needs. Rather, Plaintiff asserts that only one cell was checked for mold during the inspection report. (EC No. 46-2). Further, Plaintiff does not contest that a private company was brought in to perform an inspection or that the OCDC followed the remediation recommendation. Furthermore, Plaintiff has failed to show that he has suffered from any serious physical or emotional injury as a result of the alleged conditions. Therefore, because Plaintiff has failed to show a constitutional violation, Defendants are entitled to summary judgment.[4]

### IV. CONCLUSION

After a thorough review of the Report and the entire record in this case, the court adopts the Magistrate Judge's Report (ECF No. 47) to the extent that it is consistent with this Order and incorporates it herein. Accordingly, Defendants' Motion for Summary Judgment (ECF No. 31) is **GRANTED.**

**IT IS SO ORDERED.**

                                      s/ Timothy M. Cain
                                      United States District Judge

January 30, 2018
Anderson, South Carolina

### NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.

---

[4] In the Report, the magistrate judge provided an in-depth review of Plaintiff's failure to exhaust administrative remedies. However, because Defendants did not clearly raise this affirmative defense, and in light of the court's analysis of the merits of Plaintiff's claims, the court finds it unnecessary to address this issue. The court concurs with the remaining findings in the Report.